# Exhibit 24



**Carmel Gill**
Corporate Counsel
TEL:   (720) 888-7736
FAX:   (720) 888-5128
carmel.gill@level3.com

October 11, 2006

COPY

<u>VIA FAX & OVERNIGHT MAIL</u>

Mr. Andrew G. Williams
Supervisory Investigator
EEOC Office
Denver Field Office-541
303 East 17th Avenue, Suite 510
Denver, CO  80203

      Re:  EEOC Charge No. 541-2006-02495
           Charging Party: Rebecca Capps

Dear Mr. Williams:

This constitutes Level 3 Communications, Inc's ("Level 3") response to the Charge of Discrimination filed by Charging Party, Rebecca Capps. Level 3 firmly disagrees with Charging Party's interpretation of events and, for the reasons set forth below, believes that the facts will lead you to the inevitable conclusion that a Finding of No Cause is warranted.

## Position Statement

**I.  Introduction**

Charging Party was terminated as part of a Reduction in Force because: (1) her position was eliminated when three manager roles were merged into one, and she lacked the experience needed for the merged role; (2) she was less qualified for the remaining open positions than other employees; (3) she failed to fulfill the requirements of her existing job even when reminded of them by her supervisor; and (4) she had poor interpersonal skills as reflected by her management performance history and her antagonistic communications with her manager. Charging Party's supervisors were not aware of any of Charging Party's alleged medical issues when they made the decision to terminate Charging Party.

Charging Party was an employee of Level 3 from August 30, 1999 until she was terminated as part of a Reduction in Force ("RIF") effective May 5, 2006 (the "May RIF"). Charging Party was aware that her employment was "at-will." *See*, Level 3 Communications, Inc. Human Resources Policies, Statement of Acknowledgement and Compliance, signed by Rebecca Capps, on August 27, 2002, attached hereto as Exhibit A.

Level 3 acquired five separate companies during the past year. As part of the process of integrating the new companies, Level 3 has been identifying redundant positions and achieving

cost savings by eliminating redundant positions. Since January 2006, Level 3 has had monthly RIFs to eliminate redundant positions and achieve the cost savings anticipated by the acquisitions. Charging Party was one of more than 85 employees within the Field Services Division of Level 3, and one of 131 employees company-wide, let go during the May RIF.

## II. The May RIF

Kaily Bissani became Charging Party's supervisor on March 31, 2006. Prior to the May RIF, the Level 3 field services organization was divided into two groups – Inside Plant (also known as "Metro") and Outside Plant. Charging Party reported to Mr. Bissani, under the title of Outside Plant Manager, and managed a group of outside plant technicians. Also reporting to Mr. Bissani was Diron Benschop, Metro Manager, the manager of inside plant at the Level 3 Denver Gateway, as well as other individual contributors who worked on inside plant. Mr. Bissani also managed Everett McClain, a WilTel outside plant manager. As a result of Level 3's acquisition of WilTel, Inc. ("WilTel"), Mr. Bissani was required to merge the local WilTel field services organization with his Level 3 field services organization, and to eliminate redundant positions. Mr. Bissani combined the Level 3 inside plant and outside plant management responsibilities together with the WilTel outside plant project coordination, into a combined position titled "Field Manager," thereby eliminating two management positions. A copy of the Job Specifications for the Field Manager position is attached hereto as Exhibit B. Mr. Bissani also eliminated two field services technician positions as part of the May RIF. It should also be noted that Mr. Bissani's position changed from "Vice President" to "Director" in conjunction with the May RIF.

The Field Manager position required "10 years of inside and outside plant responsibilities, knowledge and experience along with a solid management track record and experience level." *See*, Exhibit B. Mr. Bissani and his supervisor, Tim Elbert, interviewed both of Mr. Bissani's existing managers for the new position, but determined that neither of them had the requisite skill set for the new combined management position. Charging Party lacked knowledge of the Metro (inside plant) portion of the Field Manager job, and, as discussed in detail below, had a poor management track record and negative attitude. Neither Mr. Bissani nor Mr. Elbert was aware of any medical condition affecting Charging Party at the time of the decision not to select her for the Field Manager position. Indeed, Mr. Elbert had joined Level 3 from WilTel only a few weeks prior, on March 11, 2006, and Mr. Bissani had only recently become Charging Party's supervisor. Mr. Bissani ultimately selected for the Field Manager position another candidate, Steve Forry, who possessed both inside and outside plant experience.

Mr. Bissani was also required to eliminate some of the technical positions within his group. Mr. Bissani looked at the qualifications of all of the employees within his group and selected the most qualified candidates. Charging Party was not selected because she lacked the Metro experience needed for the role, had failed to demonstrate that she could report to work at the Denver gateway (from her home in Wyoming) on a regular basis, had demonstrated performance problems over the past two years, and (as documented in her 2005 performance summary) had been unprofessional and antagonistic in her communications. Mr. Bissani was not aware of any